[No. 39289. Department Two. July 27, 1967.]

THE STATE OF WASHINGTON, *Respondent,* v. ALBERT EDWIN ROADHS, *Appellant,* CHARLES BRADNEY SULLIVAN *et al., Defendants.*\*

\*Reported in 430 P.2d 586.

*Jess E. Minium, Jr.* (of *Callahan & Minium*), for appellant (appointed counsel for appeal).

*Henry R. Dunn,* for respondent.

NEILL, J.—June 4, 1966, at about 9:30 p.m., Albert Edwin Roadhs and two other men broke into the Cowlitz County Public Utility District compound. Defendant Roadhs was apprehended by the police inside of a 3-sided shed in the compound. He was charged with and convicted of second degree burglary. Defendant contends that he was improperly charged with second degree burglary since he did not break and enter any building or other structure wherein any property is kept for use, sale or deposit.

The Public Utility District warehouse compound consists of a blacktopped area 150 by 200-400 feet. The entire area is surrounded by a cyclone fence 6 to 7 feet high, with strands of barbed wire strung along the top making the fence barrier 9 to 10 feet high. Inside of the compound are five buildings. Three of these buildings are 3-sided sheds used for the storage of trucks, tools and rolls of wire. The remaining two buildings are completely enclosed. One serves as a garage and the other is used for the storage of electrical transformers and equipment. Some materials and equipment are kept in the open area unprotected from the weather. The compound arrangement is such that the walls of some of the buildings form the exterior wall of the compound, while the cyclone fence in question constitutes a continuation of the building wall, to the end that the exterior barrier of the compound consists of a combination of building walls and the fence. Entry to this compound is

normally made through one of three gates, which are pad-locked at night.

Defendant Roadhs and his companions gained entrance into the compound by cutting the three strands of barbed wire at the top of the fence and climbing over the fence into the compound.

RCW 9.19.020 provides:

> Every person who, with intent to commit some crime therein shall, under circumstances not amounting to bur-glary in the first degree, enter the dwelling house of another or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

The principal question presented on appeal is: Does the fence here in question constitute a "building" or "struc-ture" wherein property is kept for use, sale or deposit, as those terms are used in RCW 9.19.020? This question is one of first impression.

RCW 9.01.010 provides in part:

> In construing the provisions of this act, save when otherwise plainly declared or clearly apparent from the context, the following rules shall be observed:
>
> . . . .
>
> (18) The word "building" shall include every house, shed, boat, watercraft, railway car, tent or booth, whether completed or not, suitable for affording shelter for any human being, or as a place where any property is or shall be kept for use, sale or deposit.

The above-quoted statute is quite specific as to what constitutes a "building." Where a statute specifically desig-nates the things to which it refers, there is an inference that all omissions were intended by the legislature, expres-sio unius est exclusio alterius. *State ex rel. Port of Seattle v. Department of Pub. Serv.,* 1 Wn.2d 102, 95 P.2d 1007 (1939); 2 Horack, Sutherland's Statutes and Statutory Con-struction § 4915 (3d ed. 1943). Affirmative specification ex-cludes implication. *Layne v. Hayes,* 141 W. Va. 289, 90

S.E.2d 270 (1955). Without going into an etymological dissection of the words used by the legislature in defining "building", we can clearly conclude that a fence is not encompassed within the concept of a "building" as that term is used in RCW 9.19.020.

The term "structure" as used in RCW 9.19.020 is not given any statutory definition. We are bound therefore by the rule that, in interpreting the words of a statute, the words are to be given their ordinary meaning. *State v. Miller,* 72 Wash. 154, 129 Pac. 1100 (1913); *State ex rel. Longview Fire Fighters Union v. Longview,* 65 Wn.2d 568, 399 P.2d 1 (1965). The term "structure" in its ordinary meaning includes "any production or piece of work artificially built up or composed of parts joined together in some definite manner." 2 Anderson, Wharton's Criminal Law and Procedure § 428 (1957). As is clearly apparent, the term "structure" is quite broad in its application. It could, for example apply equally to a building or an apple box. Since it is doubtful that the legislature intended the word "structure" to have such broad application, we must resort to a second principle of statutory construction, noscitur a sociis. This principle requires that more general terms in a statute or ordinance be interpreted in a manner consistent with and analogous to the more specific terms in the statute or ordinance. 2 Horack, Sutherland's Statutory Construction § 4908 (3d ed. 1943); Black's Law Dictionary, p. 1209 (4th ed. 1951). Considering the statutory definition given to the more specific term "building," and assuming, as we must, that the legislature intended to enlarge the scope of the burglary statute by the addition of the words "or other structure" to RCW 9.19.020, we conclude that a fence of the sort here in question constitutes a "structure" within the meaning of that statute. Were the fence a mere boundary fence or one erected for the *sole* purpose of esthetic beautification, it would not constitute a "structure" as that term was intended to be interpreted by the legislature. However, where the fence is of such a nature that it is erected mainly for the purpose of protecting property within its confines and is, in fact, an integral part of a closed

compound, its function becomes analogous to that of a "building" and the fence itself constitutes a "structure" subject to being burglarized.

Defendant also assigns error to the trial court's giving the following instruction to the jury:

Under the laws of this state, the word "building" shall include every house, shed, boat, watercraft, railway car, tent or booth, whether completed or not, suitable for affording shelter for any human being, or as a place where any property is or shall be kept for use, sale or deposit. Instruction No. 10.

Defendant bases his argument on the fact that this court held in *State v. Petit,* 32 Wash. 129, 72 Pac. 1021 (1903), that a railway flat car is not a railway car as that term is used in the burglary statutes.

■ Where a statutory definition is given of a word used in the statute, it is not error for the court to use the statutory language in defining that term for the jury. *Wick v. Irwin,* 66 Wn.2d 9, 400 P.2d 786 (1965). Since there is no similarity between a railway car and the fence here in question, defendant could not in any way be prejudiced by the refusal of the court to draw the distinction between a railway car and a railway flat car.

The judgment is affirmed.

FINLEY, C. J., DONWORTH and HAMILTON, JJ., and DENNEY, J. Pro Tem., concur.