BENEDICT v DEPARTMENT OF TREASURY

Docket No. 204842. Submitted February 2, 1999, at Lansing. Decided July 13, 1999, at 9:10 A.M.

Lyle T. and Pamela L. Benedict petitioned the Tax Tribunal, contesting a 1991 assessment by the Department of Treasury under the now-repealed intangibles tax act, MCL 205.131 et seq.; MSA 7.556(1) et seq., with respect to a judgment interest award that the petitioners had received in conjunction with an award of damages in an action that they had brought. The department argued that the judgment interest award was intangible personal property under either of two catch-all provisions found in the definition of intangible personal property in subsection b of § 1 of the intangibles tax act, MCL 205.131(b); MSA 7.556(1)(b). The Tax Tribunal upheld the assessment, holding that although one of the catch-all provisions properly was limited to commercial transactions, the other catch-all provision that included within the definition of intangible personal property "any and all other credits and evidences of indebtedness" was not similarly limited and that the petitioners' award of judgment interest fell within the plain and unambiguous meaning of that statutory definition. The petitioners appealed.

The Court of Appeals held:

1. Because reasonable minds could differ concerning the meaning of the two catch-all provisions found in the statutory definition of intangible personal property, judicial construction of the language of the statute is necessary to ascertain the intent of the Legislature.

2. The meaning of general words that are used in a statute following a designation of particular subjects ordinarily will be presumed to be and will be construed as restricted by the particular designation so as to include only those things of the same kind, class, character, or nature as those specifically enumerated. In other words, it is presumed that the draftsman must have inserted the general words in case something that ought to have been included among the specifically enumerated items had been omitted.

3. The Tax Tribunal properly held that the catch-all provision that defined intangible personal property as "other obligations for the

payment of money" was properly limited by the context in which it was used to commercial transactions.

4. A fundamental tenet of statutory construction of the language of a tax statute is that ambiguities are to be resolved in favor of the taxpayer. Another tenet is that a construction of a statute that renders any of the statutory language surplusage, nugatory, absurd, or illogical is to be avoided. The Tax Tribunal's broad construction of the "any and all other credits and evidences of indebtedness" catchall provision of the definition of intangible personal property is not in accord with either of these principles. Accordingly, the Tax Tribunal erred in concluding that the petitioner's award of judgment interest was subject to taxation under the now-repealed intangibles tax act.

Reversed and remanded.

1. STATUTES — JUDICIAL CONSTRUCTION — DOCTRINE OF EJUSDEM GENERIS.

The linguistic canon of statutory construction known as the doctrine of ejusdem generis holds that the meaning of general words that are used in a statute following a designation of particular subjects ordinarily will be presumed to be and will be construed as restricted by the particular designation so as to include only those things of the same kind, class, character, or nature as those specifically enumerated; it is presumed that the draftsman must have inserted the general words in case something that ought to have been included among the specifically enumerated items had been omitted.

2. STATUTES — JUDICIAL CONSTRUCTION — TAX STATUTES — AMBIGUITIES.

A fundamental tenet of statutory construction of the language of a tax statute is that ambiguities are to be resolved in favor of the taxpayer.

3. STATUTES — JUDICIAL CONSTRUCTION — SURPLUSAGE.

A construction of a statute that renders any of the statutory language surplusage, nugatory, absurd, or illogical is to be avoided.

4. TAXATION — INTANGIBLES TAX ACT — JUDGMENT INTEREST.

An award of judgment interest was not intangible personal property within the meaning of the now-repealed intangibles tax act, and accordingly, the award was not subject to a tax assessment under that act (former MCL 205.131[b]; MSA 7.556[1][b]).

*Strohl & Borda, P.C.* (by *Jeffrey B. Levine*), for the petitioners.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Tracy A. Sonneborn,* Assistant Attorney General, for the respondent.

Amicus Curiae:

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Robert F. Rhoades*), for William and Marilyn Morrocco.

Before: FITZGERALD, P.J., and HOLBROOK, JR., and O'CONNELL, JJ.

PER CURIAM. Petitioners appeal as of right from a judgment of the Michigan Tax Tribunal upholding an intangibles tax assessment on the interest portion of a personal injury award. We reverse and remand.

The material facts are not in dispute. In 1982, petitioner Lyle Benedict (hereinafter Benedict) was employed by a janitorial service. Benedict was injured while at work and, as a result, has been rendered a paraplegic. Benedict initiated a cause of action in that same year, suing Progressive Builders & Construction Co, Inc. and the State of Michigan, Department of Social Services (hereinafter DSS). After a lengthy litigation, involving several appeals, judgment was entered against the DSS in 1991. Benedict was awarded $919,245.40 and his wife, petitioner Pamela L. Benedict, was awarded $85,750.[1] Petitioners were further awarded $1,452,676 in interest. Petitioners did not file an intangible tax return with respect to the interest award. In March 1996, respondent issued a final assessment for the tax year 1991 of intangible tax on the judgment interest in the amount $50,933,

---

[1] Petitioners were divorced in 1992.

plus interest.[2] The assessment was subsequently upheld by the Tax Tribunal.

Petitioners were taxed under Michigan's former intangibles tax act, MCL 205.131 *et seq.*; MSA 7.556(1) *et seq.* (hereinafter the act).[3] Subsection b of § 1 of the act, MCL 205.131(b); MSA 7.556(1)(b), defined "intangible personal property" to mean

> moneys on hand or on deposit or in transit, shares of stock, and other units of interest, in corporations, joint stock companies, and other associations conducted for profit, not, however, including the interest of a partner under a partnership agreement; securities which constitute a part of an issue of similar securities, such as bonds, certificates of indebtedness, debentures, notes, and certificates of deposit therefor; annuities; accounts and notes receivable, land contracts receivable, real estate and chattel mortgages receivable, conditional sale contracts receivable, *and other obligations for the payment of money;* equitable interest in any of the foregoing classes of intangible personal property, including interest of beneficiaries under trust whether created inter vivos or by will; *and any and all other credits and evidences of indebtedness whether secured or unsecured.* [Emphasis added.]

At its essence, this case centers on the reach of the two catch-all provisions highlighted in the above definition. The tribunal ruled that while the first provision ("and all other obligations for the payment of money") could be read as being limited to commercial transactions, the second ("and any and all other credits and evidences of indebtedness whether

---

[2] In their petition contesting the intangible tax assessment, petitioners asserted that they had reported the interest on their 1991 joint income tax return.

[3] The act was subsequently repealed by 1995 PA 5, effective January 1, 1998.

secured or unsecured") is not similarly limited. "As an evidence of indebtedness," the tribunal reasoned, "petitioners' judgment is intangible personal property as defined by the plain and unambiguous terms of section 1(b)."

"In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong legal principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Michigan Bell Telephone Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994). Review of the tribunals' findings of fact are not at issue, given that the case was presented to the tribunal on a set of stipulated facts. Rather, the central issue for us to resolve is whether the interest on petitioners' judgment falls within the above statutory definition.

Issues of statutory interpretation are reviewed de novo on appeal. *Michigan Automotive Research Corp v Dep't of Treasury (After Remand)*, 222 Mich App 227, 231; 564 NW2d 503 (1997). "The overriding goal guiding judicial interpretation of statutes is to discover and give effect to legislative intent. The starting place for the search for intent is the language used in the·statute." *Bio-Magnetic Resonance, Inc v Dep't of Public Health*, 234 Mich App 225, 229; 593 NW2d 641 (1999) (citations omitted). If the language of the statute is clear and unambiguous, then no further interpretation is required. *In re Worker's Compensation Lien*, 231 Mich App 556, 561; 591 NW2d 221 (1998). However, judicial construction is appropriate when reasonable minds can differ with regard to the meaning of the statutory language. *Michigan Bell Tele-*

*phone Co v Dep't of Treasury*, 229 Mich App 200, 216; 581 NW2d 770 (1998).

We conclude that reasonable minds can differ concerning the meaning of the two catch-all provisions. Therefore, they must be construed to ascertain legislative intent. We begin by turning to the entire definition for guidance.

The definition is divided into six separate sections, each separated by a semicolon. The fifth of these states that each section immediately preceding establishes a separate class of intangible personal property. The first catch-all provision is a part of the fourth class, which includes the following list of specifics: "accounts and notes receivable, land contracts receivable, real estate and chattel mortgages receivable, conditional sale contracts receivable . . . ." MCL 205.131(1)(b); MSA 7.556(1)(b). We believe that the association of the "and other obligations for the payment of money" catch-all with this list signals that the scope of the provision is to be limited by that list. See *People v Jacques*, 456 Mich 352, 355; 572 NW2d 195 (1998); Bennion, Statutory Interpretation (2d ed), § 379, p 858.

One of the most widely applied of the linguistic canons of statutory construction is the doctrine of ejusdem generis:

> This is a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only those things of the same kind, class, character or nature as those specifically enumerated. [*People v Smith*, 393 Mich 432, 436; 225 NW2d 165 (1975).]

The scope of the category established is only as broad as necessary to encompass the area embraced by the specifically enumerated subjects. It is within such a designated scope that any general catch-all provision should be interpreted. In other words, it is presumed that "the draftsman must . . . have inserted the general words in case something which ought to have been included among the specifically enumerated items had been omitted." Cross, Statutory Interpretation, p 116.

We believe that the tribunal correctly concluded that the category established in the fourth section of the definition is limited to payment obligations arising from commercial exchanges. The specific list names several types of receivables generated in the course of certain commercial transactions. Accordingly, the catch-all "and other obligations for the payment of money" should be read as referring to other commercial exchanges not mentioned in the foregoing list. Interest on a judgment in a lawsuit does not fall within that category.

We now turn to the second catch-all provision. Unlike the first, this provision is not specifically tied to a single genus; instead, it appears in a separate section at the very end of subsection 1(b). The question arises whether the scope of this provision is similarly limited. The tribunal concluded that the scope of the provision sweeps broadly because it is "without limitation or differentiation." We disagree.

In the typical situation where the ejusdem generis doctrine applies, the statutory framework reads as follows: "X, Y, Z," followed by a general residuary phrase. Bennion, *supra* at 858. See also Scalia, A Matter of Interpretation, pp 25-26. The definition's fourth

section clearly follows this paradigm. However, application of the principle is not limited by the form the association takes or the words employed. Rather, the operative inquiry is whether the context in which the general phrase appears indicates or implies that the drafters intended that the phrase be limited. Cross, *supra* at 116. If the text includes indications that the Legislature did not intend such a limitation, then the doctrine should not be applied. "Like all other linguistic canons of construction, the *ejusdem generis* principle applies only where the contrary intention does not appear." Bennion, *supra*, § 386, p 867 (italics in original).

The act "provid[ed] for the imposition and collection of a specific tax on the privilege of ownership of intangible personal property." *Rosenbalm v Dep't of Treasury*, 164 Mich App 99, 103; 416 NW2d 343 (1987). However, the tax was not to be imposed on all types of intangible property. By setting forth specific categories of property encompassed within the reach of the act, the Legislature clearly indicated its intent that the scope of the act be limited. See *Jacques*, *supra* at 357-358. The construction placed on the second catch-all provision by the tribunal defeats this purpose. The types of intangibles set forth all deal with various types of specific financial exchanges and investments, including ownership and creditor interest in corporations, annuities, as well as certain commercial transactions. The only way interest on a judgment in a civil cause of action would fit within this definition is if the specificity of those categories is ignored in favor of a broadly construed catch-all provision.

Further, we note that the construction placed on the provision violates other canons of statutory construction. For example, it is a fundamental tenet that "ambiguities in the language of a tax statute are to be resolved in favor of the taxpayer." *Michigan Bell, supra*, 445 Mich 477. The tribunal's construction does not satisfy this rule. Additionally, we note that if the scope of the second catch-all is as broad as the tribunal indicates, then the use of the specific examples set forth in the preceding sections would be unnecessary. Driedger, The Construction of Statutes (2d ed), p 119. When possible, this Court avoids any "construction that renders any statutory language surplusage, nugatory, absurd, or illogical." *Ansell v Dep't of Commerce (On Remand)*, 222 Mich App 347, 355; 564 NW2d 519 (1997).[4]

We hold, therefore, that the Tax Tribunal erred in concluding that petitioners' interest award was subject to taxation under the act. Accordingly, we reverse the decision of the tribunal and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[4] A broad construction also negates the limits placed on the fourth category by the first catch-all provision, thereby rendering the first catch-all nugatory. Again, such a construction is to be avoided. *Syntex Laboratories, Inc v Dep't of Treasury*, 188 Mich App 383, 388; 470 NW2d 665 (1991).